1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLY NEWTON, | No. C 05-1204 SBA |
| Plaintiff, | *(Related to C 04-2959 SBA)* |
| v. | **ORDER** |
| P. ARAPAIA, et al., | |
| Defendants. | |
| _____/ | |

This matter comes before the Court on Defendants P. Arapaia, B. Marker, and C. Costigan's partial motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [Docket No. 4] and Defendants Steven Brinkley, Michelle Day, and Kellie Martin's partial motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [Docket No. 5].

Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS WITH LEAVE TO AMEND the partial motions to dismiss of P. Arapaia, B. Marker, C. Costigan, Steven Brinkley, Michelle Day, and Kellie Martin.

**BACKGROUND**

**A.     Factual Background.**[1]

**1.     Parties.**

Plaintiff Shelly Newton ("Newton" or "Plaintiff") is an adult female African American who currently resides in Contra Costa County, California. March 2005 Compl. at ¶ 4.

Defendants P. Arpaia ("Arapaia"), B. Marker ("Marker"), and C. Costigan ("Costigan") are members of the California Highway Patrol ("CHP"), who, during the relevant period, were acting under color of state law as peace officers within the State of California. *Id.* ¶ 5.

---

[1]All facts are taken from Plaintiff's Complaint for Damages against P. Arapaia, B. Marker, C. Costigan, Steven Brinkley, Michelle Day, and Kellie Martinez, filed on March 24, 2005 (the "March 2005 Complaint").

**United States District Court**
For the Northern District of California

1    Defendants Steven Brinkley ("Brinkley"), Michelle Day ("Day"), and Kellie Martinez ("Martinez")

2    are uniformed Sheriff Deputies in the Contra Costa County Sheriff's Department, who, during the relevant

3    period, were acting under color of state law as sworn peace officers within the State of California. *Id.* ¶ 6.

4    **2.      Allegations.**

5    On or about July 26, 2003, CHP officers Arpaia and Marker detained Plaintiff on Highway 24, in

6    Contra Costa County, for an alleged traffic violation. *Id.* ¶ 10. Officers Arpaia and Marker issued Plaintiff a

7    citation and notice to appear and released Plaintiff. *Id.* ¶ 10. At the time of release, Defendants Arpaia and

8    Marker informed Plaintiff that her license was suspended for an out-of-state vehicle code violation. *Id.* ¶ 11.

9    Plaintiff denied she was ever in the state in question. *Id.*

10   Officers Arpaia and Marker advised Plaintiff that she could not drive her vehicle away from the scene

11   because her license was suspended. *Id.* ¶ 12. They then called a tow truck for the purpose of towing Plaintiff's

12   vehicle to a storage facility. *Id.* They subsequently advised Plaintiff that she could use the shoulder of the

13   highway to exit the highway on foot, but claimed that they were required to escort pedestrians off of the

14   highway and restrain them in handcuffs. *Id.* ¶ 13.

15   When Plaintiff objected to being handcuffed, Officers Arpaia and Marker used force to handcuff

16   Plaintiff and placed her in the rear of their patrol vehicle. *Id.* ¶ 14. Officers Arpaia and Marker then exited

17   Highway 24 and were joined by CHP officer Sargent Costigan. *Id.* ¶ 15. At that point, officers Arpaia,

18   Marker, and Costigan placed a hood over Plaintiff's head. *Id.* Officers Arapia and Marker then drove Plaintiff,

19   who remained handcuffed in the back of the vehicle, to the Martinez Detention Facility. *Id.*

20   At the Martinez Detention Facility, Plaintiff was handcuffed to a metal bench in the receiving bay. *Id.*

21   Sheriff's Deputies Brinkley, Day, and Martinez found Plaintiff handcuffed to the metal bench and attempted to

22   pull her away from the bench while she was still handcuffed to it. *Id.* ¶ 16. Deputies Brinkley, Day, and

23   Martinez then took Plaintiff into a room, forced her to lie face down on the floor, and removed Plaintiff's shoes

24   and jewelry. *Id.* ¶ 17. As a result of her detention, Plaintiff suffered multiple injuries, including broken bones.

25   *Id.* ¶ 18.

26   **B.      Procedural Background.**

27

28                                                                    2

**United States District Court**
For the Northern District of California

1    On July 21, 2004, Plaintiff filed a complaint against Contra Costa County (referred to herein as the

2    "July 2004 Complaint").  The July 2004 Complaint alleges the following causes of action: (1) failure to train;

3    (2) "custom, usage, and policy" violations of 42 U.S.C. § 1983; (3) failure to supervise; (4) assault and battery;

4    and (5) excessive force.  In the July 2004 Complaint, Plaintiff seeks compensatory and special damages.

5    Plaintiff also requests "leave to amend th[e] complaint when the identity and capacity of the unidentified Sheriff

6    Deputies is ascertained, for leave to name them as parties . . . herein, and leave to seek punitive damages

7    against them, jointly and severally."

8    On March 24, 2005, Plaintiff filed a complaint (referred to herein as the "March 2005 Complaint")

9    against defendants Arapaia, Marker, Costigan, Brinkley, Day and Martinez (collectively, the "Defendants").

10   The March 2005 Complaint alleges the following causes of action: (1) violations of the Fourth and Fourteenth

11   Amendments (brought against all Defendants pursuant to 42 U.S.C. § 1983); (2) "failure to intercede" (brought

12   against Defendant Costigan only pursuant to 42 U.S.C. § 1983); (3) violations of "California Civil Code

13   Section 51-151.7" (brought against all Defendants); (4) assault and battery (brought against all Defendants);

14   (5) false arrest (brought against Defendants Arpaia and Marker only); and (6) false imprisonment (brought

15   against Defendants Arpaia and Marker only).  In the March 2005 Complaint, Plaintiff seeks compensatory,

16   general, exemplary, and punitive damages.

17                                    **LEGAL STANDARD**

18   **A.    Federal Rule of Civil Procedure 12(b)(6).**

19        Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if it

20   appears beyond a reasonable doubt that the plaintiff "can prove no set of facts in support of his claim which

21   would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  For purposes of such a motion,

22   the complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations

23   are taken as true.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest & Jennings, Inc. v. American*

24   *Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994).  All reasonable inferences are to be drawn in favor of

25   the plaintiff.  *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

26        The court does not accept as true unreasonable inferences or conclusory allegations cast in the form

27

28                                          3

United States District Court
For the Northern District of California

1   of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *See Miranda*

2   *v. Clark County, Nev.*, 279 F.3d 1102, 1106 (9th Cir. 2002) ("[C]onclusory allegations of law and

3   unwarranted inferences will not defeat a motion to dismiss for failure to state a claim."); *Sprewell v. Golden*

4   *State Warriors*, 266 F.3d 1187 (9th Cir. 2001); *McGlinchy v. Shell Chem Co.*, 845 F.2d 802, 810 (9th Cir.

5   1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state

6   a claim.").

7        When a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless

8   the court determines that the allegation of other facts consistent with the challenged pleading could not possibly

9   cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.

10  1986). The Court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory

11  motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party

12  and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir.

13  1989). Of these factors, prejudice to the opposing party is the most important. *See Jackson v. Bank of*

14  *Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401

15  U.S. 321, 330-31 (1971). Leave to amend is properly denied "where the amendment would be futile."

16  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

17                                      **DISCUSSION**

18  **A.   Defendants' Motion to Dismiss the Portion of Plaintiff's First Cause of Action Relating to**
         **Alleged Violations of the Fourteenth Amendment.**
19

20       Defendants Arapaia, Marker, Costigan, Brinkley, Day, and Martinez request that the Court dismiss

21  the portion of Plaintiff's first cause of action that alleges violations of the Fourteenth Amendment on the grounds

22  that Plaintiff has not alleged any facts that implicate a violation of the Fourteenth Amendment.[2] Defendants

23  further argue that Plaintiff's section 1983 claim is most properly characterized as a claim asserting wrongful

24  conduct during an arrest or seizure under the Fourth Amendment. In response, Plaintiff concedes that she

25  _____

26       [2]The Fourteenth Amendment provides, in relevant part, that: "No State shall make or enforce any law
    which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any
    person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction
27  the equal protection of the laws." U.S. Const. Amend. XIV.

28                                           4

intended her first cause of action to allege violations of the Fourth Amendment only, and refers to the Fourteenth Amendment only insofar as the Fourteenth Amendment "makes the Fourth Amendment applicable to Defendant's [*sic*] conduct."[3]

In *Graham v. Connor*, 490 U.S. 386, 394 (1989), the United States Supreme Court emphasized that 42 U.S.C. § 1983 "is not a source of substantive rights." *Id.* Rather, section 1983 "merely provides a method for vindicating federal rights elsewhere conferred." *Id.* Accordingly, an analysis of excessive force claims brought under section 1983 must first begin by identifying the specific constitutional right that has been allegedly violated. *Id.* Only after identifying the specific constitutional right allegedly infringed can the Court assess the validity of the claim by analyzing it in reference to the respective constitutional standard. *Id.*

In *Graham,* the United States Supreme Court determined that where an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." 490 U.S. at 394. The Court further held that "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard, rather than under a substantive due process approach." *Id.* at 395 (emphasis added). This holding was based on the recognition that "the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct." *Id.*; *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994).

Similarly, in *Tennessee v. Garner*, 471 U.S. 1, 5 (1985), the Supreme Court addressed an "unreasonable search and seizure" claim that, like Plaintiff's claim in this case, alleged both Fourth and Fourteenth Amendment violations. *Id.* The Court "analyzed the constitutionality of the challenged application of force solely by reference to the Fourth Amendment's prohibition against unreasonable seizures of the person . . . ." *Id.*

---

[3]Plaintiff also raises the same argument in defense of her second cause of action. However, as noted in the reply brief of Defendants Arapaia, Marker, and Costigan, the second cause of action is asserted against Defendant Costigan only, and Defendant Costigan has not sought a dismissal of that claim. Accordingly, Plaintiff's arguments regarding the second cause of action are irrelevant.

5

Since Plaintiff concedes that she is not asserting violations of either the due process clause or the equal protection clause of the Fourteenth Amendment, Plaintiff's Fourteenth Amendment violation claim, as set forth in her first cause of action, is hereby DISMISSED WITHOUT PREJUDICE.

**B.** **Defendants' Motion to Dismiss Plaintiff's Third through Sixth Causes of Action Due to Plaintiff's Failure to Comply with the California Tort Claims Act.**

Defendants Arpaia, Marker, and Costigan request that the Court dismiss Plaintiff's fourth through sixth causes of action[4] on the grounds that Plaintiff is barred from bringing her state law tort claims because she has failed to plead compliance with the California Tort Claims Act.[5]  In their separately filed partial motion to dismiss, Defendants Brinkley, Day, and Martinez also request dismissal of Plaintiff's third[6] through sixth causes of action on this same basis.[7]  In response to both motions, Plaintiff argues that the California Tort Claims Act does not apply to her state law claims against Arpaia, Marker, and Costigan because Arpaia, Marker, and Costigan are being sued in their "individual and personal capacity."  Similarly, Plaintiff argues that the California Tort Claims Act does not apply to her state law claims against Brinkley, Day, and Martinez because Brinkley, Day, and Martinez "are not public entities."[8]

Under California Government Code § 911.2, "[a] claim relating to a cause of action for death or for

---

[4]Plaintiff's fourth cause of action, which is asserted against all Defendants, is "assault and battery." Plaintiff's fifth and sixth causes of action, which are asserted against Arpaia and Marker only, are "false arrest" and "false imprisonment," respectively.

[5]The California Tort Claims Act is found at California Government Code §§ 900 *et seq.*

[6]Plaintiff's third cause of action, which is asserted against all Defendants, alleges violations of "California Civil Code Section 51-151.7."  The parties appear to agree that this cause of action is actually referring to California Civil Code § 51.7, also known as California's Unruh Civil Rights Act.  Like Plaintiff's other state law claims, the Unruh Civil Rights Act cause of action is subject to the requirements of California's California Tort Claims Act.  *See Gatto v. County of Sonoma*, 98 Cal.App.4th 744, 754 n.7 (2002).

[7]Since Plaintiff's fifth and sixth causes of action are not asserted against Brinkley, Day, or Martinez, the Court will construe Brinkley, Day, and Martinez's motion as a motion to dismiss Plaintiff's third and fourth causes of action only.

[8]Plaintiff also argues that the California Tort Claims Act is not applicable to her federal claims. However, Defendants are not raising the California Tort Claims Act as a defense to Plaintiff's first or second causes of action, which are purportedly brought under 42 U.S.C. § 1983, and have not moved to dismiss Plaintiff's first or second causes of action on these grounds.  Thus, Plaintiff's argument is not relevant to this analysis.

6

United States District Court

For the Northern District of California

1  injury to person or to personal property . . . shall be presented [to the public entity]. . . not later than six months

2  after the accrual of the cause of action." *Id.*  Additionally, California Government Code § 945.4 provides that

3  "no suit for money or damages may be brought against a public entity on a cause of action for which a claim

4  is required to be presented . . . until a written claim therefor has been presented to the public entity and has

5  been acted upon by the board, or has been deemed to have been rejected by the board . . . ." Cal. Gov. Code

6  § 945.4.  Finally, section 945.6 provides that, "any suit brought against a public entity on a cause of action for

7  which a claim is required to be presented . . . must be commenced, if written notice is given in accordance with

8  section 913, not later than six months after the date such notice is personally delivered or deposited in the mail."

9  Cal. Gov. Code § 945.6.  "[T]he combined effect of sections 911.2 and 945.6 is that a claim for a personal

10  injury action against a public entity must be presented within six months of the injury; and if the claim is denied,

11  ***suit must be filed within six months of the date of denial***."  *Schmidt v. Southern California Rapid*

12  *Transit Dist.*, 14 Cal. App. 4th 23, 25-26 (1993) (emphasis added).

13         Section 950.2 of the California Government Code provides in pertinent part, "a cause of action against

14  a public employee or former public employee from an act or omission in the scope of his employment as a

15  public employee is barred if an action against the employing public entity for such injury is barred . . . ." Cal.

16  Gov. Code § 950.2. "Proper filing of a claim against the public entity is a condition precedent to action against

17  the employees." *Moyer v. Hook*, 10 Cal. App. 3d 491, 492 (1970).  If a civil complaint does not affirmatively

18  allege compliance with the claim presentation requirements, or allege facts showing the applicability of a

19  recognized exception or excuse for noncompliance, it may be dismissed.  *State v. Superior Court*, 32 Cal.4th

20  1234, 1242 (2003).

21         It is undisputed that Plaintiff has not complied with the above-noted requirements.  Indeed, Plaintiff

22  does not dispute that the March 2005 Complaint, which is the operative complaint with respect to the instant

23  Defendants, does not contain any factual allegations sufficient to show that Plaintiff submitted a written claim

24  to Contra Costa County or to the California Highway Patrol.  For this reason alone, the state law claims in the

25  March 2005 Complaint must be dismissed.  *Superior Court*, 32 Cal.4th at 1242.

26         Additionally, Plaintiff does not dispute that she failed to file her action against Brinkley, Day, Martinez,

27

28                                                            7

United States District Court
For the Northern District of California

1    Arapaia, Marker, or Costigan within the time period prescribed by the California Tort Claims Act. Indeed,

2    Plaintiff's July 2005 Complaint indicates that Plaintiff "submitted her written claim for money damages" to

3    Contra Costa County on or about December 29, 2003 and was notified on or about February 4, 2004 that

4    her claim was denied. July 2004 Compl. at ¶ 15. While Plaintiff may have filed her action against Contra

5    Costa County within the applicable limitations period, she admits that she did not file a civil action against

6    Brinkley, Day, or Martinez until March 2005, over one year after Contra Costa County denied her claim.[9]

7    Moreover, with respect to Arapaia, Marker, and Costigan, there is no evidence that Plaintiff ever filed a claim

8    with the CHP.

9         Plaintiff's argument that the California Tort Claims Act does not apply because Brinkley, Day, and

10   Martinez are "not public entities" and because Arpaia, Marker, and Costigan are being sued in their "individual

11   capacity" is entirely inadequate and does not save her state law causes of action from dismissal. California

12   Government Code § 950.2 explicitly provides that "a cause of action against *a public employee* or former

13   public employee *from an act or omission in the scope of his employment* as a public employee is barred

14   if an action against the employing public entity for such injury is barred . . . ." Cal. Gov. Code § 950.2

15   (emphasis added). Plaintiff does not dispute that Defendants were all acting within the scope of their

16   employment at the time of their alleged interaction with Plaintiff. Indeed Plaintiff's March 2005 Complaint

17   expressly states that Defendants "were at all times relevant . . . acting under color of state law as sworn peace

18   officers within the State of California." March 2005 Compl. ¶¶ 5-6.

19        Since Defendants are all undisputedly employees of public entities, Plaintiff was required, under

20   California Government Code § 945.6, to file her civil action within six months after her claim was denied by

21

22        [9]Brinkley, Day, and Martinez also argue that Plaintiff cannot circumvent the requirements of the
     California Torts Claim Act merely by amending her July 2004 Complaint to add the individual Defendants as
23   parties in light of the fact that Plaintiff's July 2004 Complaint did not name any "doe" defendants. Since Plaintiff
     does not provide any argument in response to these assertions, the Court assumes that Plaintiff concedes these
24   points. Further, Federal Rule of Civil Procedure 15(c) appears to support Brinkley, Day, and Martinez's
     position. *See* Fed. R. Civ. P. 15(c) (providing, *inter alia*, that an amendment of a pleading relates back to the
25   date of the original pleading only when relation back is permitted by the law that provides the statute of
     limitations applicable to the action). California's fictitious name statute does provide a plaintiff with the ability
26   to "relate back" to the originally filed complaint when she amends a complaint to name individual defendants
     after she discovers their true identities. Inexplicably, however, Plaintiff's July 2004 did not name any "doe"
27   defendants and thus the fictitious name statute is inapplicable.

28
                                              8

United States District Court

For the Northern District of California

1  the relevant public entity. *See Massa v. Southern Cal. Rapid Transit Dist.*, 43 Cal.App.4th 1217, 1221

2  (1996) ("The [California Tort Claims Act] . . . requires that any suit against the public employee be commenced

3  within the time prescribed by Government Code section 945.6 for bringing an action against the public entity-

4  *i.e.* within six months of the time the claim is denied by the entity."). Accordingly, Plaintiff's third cause of action

5  is DISMISSED WITHOUT PREJUDICE with respect to Brinkley, Day, and Martinez;[10] her fourth cause of

6  action is DISMISSED WITHOUT PREJUDICE with respect to Brinkley, Day, Martinez, Arpaia, Marker,

7  and Costigan; and her fifth and sixth causes of action are DISMISSED WITHOUT PREJUDICE with respect

8  to Arapaia and Marker.[11]

9      If Plaintiff wishes to file an amended complaint that asserts state law causes of action against Brinkley,

10  Day, Martinez, Arpaia, Marker, or Costigan, **she must set forth specific factual allegations sufficient to**

11  **show either that: (1) she complied with the claim presentation requirements of the California Tort**

12  **Claims Act, or (2) she did not comply with the claim presentation requirements of the California Tort**

13  **Claims Act, but can demonstrate the existence of a recognized exception or excuse for**

14  **noncompliance.**

15                                   <u>**CONCLUSION**</u>

16      IT IS HEREBY ORDERED THAT Defendants Brinkley, Day, and Martinez's partial motion to dismiss

17  the Complaint [Docket No. 5] is GRANTED as follows:

18      1.   The portion of Plaintiff's first cause of action that refers to alleged violations of the Fourteenth

19           Amendment against Defendants Brinkley, Day, and Martinez is DISMISSED WITHOUT

20           PREJUDICE.

21      2.   Plaintiff's third cause of action against Defendants Brinkley, Day, and Martinez is DISMISSED

22

23  _____

24      [10]Since the Court hereby dismisses the third cause of action against Brinkley, Day, and Martinez on
    the grounds that Plaintiff has failed to comply with the California Tort Claims Act, the Court declines to consider

25  Brinkley, Day, and Martinez's alternative argument that California Civil Code § 51.7 does not apply to
    individual law enforcement officers.

26      [11]For reasons that are not clear, Defendants Arpaia, Marker, and Costigan did not move to dismiss
    Plaintiff's third cause of action. Accordingly, the third cause of action against Arpaia, Marker, and Costigan

27  remains.

28                                        9

WITHOUT PREJUDICE.

3.    Plaintiff's fourth cause of action against Defendants Brinkley, Day, and Martinez is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED THAT Defendants Arpaia, Marker, and Costigan's partial motion to dismiss Plaintiff's complaint [Docket No. 4] is GRANTED as follows:

1.    The portion of Plaintiff's first cause of action that refers to alleged violations of the Fourteenth Amendment against Arpaia, Marker, and Costigan is DISMISSED WITHOUT PREJUDICE.

2.    Plaintiff's fourth cause of action against Defendants Arpaia, Marker, and Costigan is DISMISSED WITHOUT PREJUDICE.

3.    Plaintiff's fifth and sixth causes of action against Defendants Arpaia and Marker is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED THAT Plaintiff is hereby granted leave to file an amended complaint that addresses the deficiencies identified in this Order within thirty days of the date of the Order.  **However, the Court reminds Plaintiff that, if she wishes to file an amended complaint that asserts state law causes of action against Brinkley, Day, Martinez, Arapaia, Marker, or Costigan, she must set forth specific factual allegations sufficient to show either that: (1) she complied with the claim presentation requirements of the California Tort Claims Act, or (2) she did not comply with the claim presentation requirements of the California Tort Claims Act, but can demonstrate the existence of a recognized exception or excuse for noncompliance.**  Plaintiff is also expressly reminded that, once an amended complaint is filed, it will supercede her prior complaint.  Therefore, the amended complaint must be self-contained and cannot refer to, or incorporate by reference, any part of her prior complaint.

IT IS FURTHER ORDERED THAT the June 21, 2005 Case Management Conference is VACATED.  The parties shall appear for a telephonic Case Management Conference on **Wednesday, September 21, 2005 at 2:45 p.m.**  The parties shall **meet and confer** prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior

United States District Court
For the Northern District of California

10

to the Case Management Conference.  Plaintiff shall be responsible for filing the statement as well as for arranging the conference call.  All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

　　　　IT IS SO ORDERED.

Dated: 6/28/05                                        s/Saundra Brown Armstrong
                                                      SAUNDRA BROWN ARMSTRONG
                                                      United States District Judge

**United States District Court**

For the Northern District of California

11