IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SHELLY NEWTON,

        Plaintiff,

  v.

P. ARPAIA, et al.,

        Defendants.

No. C 05-1204 SBA

**ORDER**

[Docket No. 18]

This matter comes before the Court on Defendants P. Arpaia, B. Marker, and C. Costigan's Motion to Dismiss [Docket No. 18]. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS IN PART AND DENIES IN PART P. Arpaia, B. Marker, and C. Costigan's Motion to Dismiss..

**BACKGROUND**

**Factual Background.**[1]

    **1.**    **Parties.**

Plaintiff Shelly Newton ("Newton" or "Plaintiff") is an adult female African American who currently resides in Contra Costa County, California. FAC at ¶ 3.

Defendants P. Arpaia ("Arpaia"), B. Marker ("Marker"), and C. Costigan ("Costigan") are members of the California Highway Patrol ("CHP"), who, during the relevant period, were acting under color of state law as peace officers within the State of California. *Id.* ¶ 4.

    **2.**    **Allegations.**

On or about July 26, 2003, CHP Officers Arpaia and Marker detained Plaintiff on Highway 24, in Contra Costa County, for an alleged traffic violation. *Id.* ¶ 9. Officers Arpaia and Marker issued Plaintiff a citation and notice to appear and released Plaintiff from custody. *Id.* At the time of release, Arpaia and

---

[1] All facts are taken from Plaintiff's First Amended Complaint ("FAC").

1  Marker informed Plaintiff that her license was suspended for an out-of-state vehicle code violation. *Id.* ¶ 10.
2  Plaintiff denied she was ever in the state in question. *Id.*

3        Officers Arpaia and Marker advised Plaintiff that she could not drive her vehicle away from the scene
4  because her license was suspended. *Id.* ¶ 11. They then called a tow truck for the purpose of towing Plaintiff's
5  vehicle to a storage facility. *Id.* They subsequently advised Plaintiff that she could use the shoulder of the
6  highway to exit the highway on foot, but claimed that they were required to escort pedestrians off of the
7  highway and to restrain them in handcuffs. *Id.* ¶ 12.

8        When Plaintiff objected to being handcuffed, Officers Arpaia and Marker used force to handcuff
9  Plaintiff and placed her in the rear of their patrol vehicle. *Id.* ¶ 13. A hood was also placed over Plaintiff's
10 head. *Id.*¶ 14. Officers Arpaia and Marker then exited Highway 24 and were joined by CHP Officer
11 Costigan. *Id.* Officers Arapia and Marker then drove Plaintiff, who remained handcuffed in the back of the
12 vehicle, to the Martinez Detention Facility. *Id.*

13       At the Martinez Detention Facility, Plaintiff was handcuffed to a metal bench in the receiving bay. *Id.*
14 Sheriff's Deputies Steven Brinkley ("Brinkley"), Michelle Day ("Day"), and Kellie Martinez ("Martinez") found
15 Plaintiff handcuffed to the metal bench and attempted to pull her away from the bench while she was still
16 handcuffed to it. *Id.* ¶ 15. Deputies Brinkley, Day, and Martinez then took Plaintiff into a room, forced her
17 to lie face down on the floor, and removed Plaintiff's shoes and jewelry. *Id.* ¶ 16. As a result of her detention,
18 Plaintiff suffered multiple injuries. *Id.* ¶ 17.

19 **B.**    **Procedural Background**.

20       On July 21, 2004, Plaintiff filed a complaint against Contra Costa County (referred to herein as the
21 "July 2004 Complaint"). The July 2004 Complaint alleged the following causes of action: (1) failure to train;
22 (2) "custom, usage, and policy" violations of 42 U.S.C. § 1983; (3) failure to supervise; (4) assault and battery;
23 and (5) excessive force. In the July 2004 Complaint, Plaintiff sought compensatory and special damages.
24 Plaintiff also requested "leave to amend th[e] complaint when the identity and capacity of the unidentified Sheriff
25 Deputies is ascertained, for leave to name them as parties Defendants herein, and leave to seek punitive
26 damages against them, jointly and severally."

2

On March 24, 2005, Plaintiff filed a complaint (referred to herein as the "March 2005 Complaint") against defendants Arpaia, Marker, Costigan, Brinkley, Day and Martinez. The March 2005 Complaint alleged the following causes of action: (1) violations of the Fourth and Fourteenth Amendments (brought against all defendants pursuant to 42 U.S.C. § 1983); (2) "failure to intercede" (brought against Costigan only pursuant to 42 U.S.C. § 1983); (3) violations of "California Civil Code Section 51-151.7" (brought against all defendants); (4) assault and battery (brought against all defendants); (5) false arrest (brought against Arpaia and Marker only); and (6) false imprisonment (brought against Arpaia and Marker only).

On April 20, 2005, Arpaia, Marker, and Costigan filed a Motion to Dismiss the March 2005 Complaint. On April 25, 2005, Martinez, Brinkley, and Day filed a Motion to Dismiss the March 2005 Complaint.

On June 28, 2005, the Court issued an Order granting Arpaia, Marker and Costigan's Motion to Dismiss and granting Martinez, Brinkley, and Day's Motion to Dismiss. The portion of Plaintiff's first cause of action that referred to alleged violations of the Fourteenth Amendment were dismissed without prejudice. Plaintiff's third causes of action against Brinkley, Day, and Martinez was dismissed without prejudice. Plaintiff's fourth cause of action against all of the defendants was also dismissed without prejudice. Additionally, Plaintiff's fifth and sixth causes of action against Arpaia and Marker were dismissed without prejudice. Plaintiff was granted leave to file an amended complaint.

On July 27, 2005, Plaintiff filed a First Amended Complaint. The First Amended Complaint alleges the following causes of action: (1) violation of the Fourth Amendment brought pursuant to 42 U.S.C. § 1983 (against Arpaia and Marker); (2) "failure to intercede" brought pursuant to 42 U.S.C. § 1983 (against Costigan); and (3) "excess force violation of the Fourth Amendment" brought pursuant to 42 U.S.C. § 1983 (against Brinkley, Day, and Martinez).

On August 4, 2005, Martinez, Brinkley, and Day filed their answer to the First Amended Complaint. Also on August 4, 2005, Arpaia, Marker, and Costigan filed the instant Motion to Dismiss.

On September 23, 2005, Plaintiff dismissed with prejudice the July 2004 Complaint against Contra Costa County. On September 28, 2005, Plaintiff dismissed Brinkley, Day, and Martinez from the action

3

pursuant to settlement.

## **LEGAL STANDARD**

### A.     Federal Rule of Civil Procedure 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if it appears beyond a reasonable doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). For purposes of such a motion, the complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest & Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994). All reasonable inferences are to be drawn in favor of the plaintiff. *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

The court does not accept as true unreasonable inferences or conclusory allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *See Miranda v. Clark County, Nev.*, 279 F.3d 1102, 1106 (9th Cir. 2002) ("[C]onclusory allegations of law and unwarranted inferences will not defeat a motion to dismiss for failure to state a claim."); *Sprewell v. Golden State Warriors*, 266 F.3d 1187 (9th Cir. 2001); *McGlinchy v. Shell Chem Co.*, 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.").

When a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The Court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989). Of these factors, prejudice to the opposing party is the most important. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971)). Leave to amend is properly denied "where the amendment would be futile."

*DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## ANALYSIS

**A.    Plaintiff's First Cause of Action for Violation of 42 U.S.C. § 1983.**

In their Motion to Dismiss, Arpaia, Marker, and Costigan (collectively, "Defendants") first move to dismiss Plaintiff's first cause of action on the grounds that Plaintiff has alleged only a Fourth, and not a Fourteenth, Amendment violation. This issue was previously addressed in the Court's June 28, 2005 Order. Specifically, the Court reviewed the factual allegations in Plaintiff's complaint and concluded that Plaintiff's 42 U.S.C. § 1983 claim was most properly characterized as a claim asserting wrongful conduct during an arrest or seizure under the Fourth Amendment. Accordingly, since Plaintiff conceded that she was not asserting violations of either the due process clause or the equal protection clause of the Fourteenth Amendment, the portion of Plaintiff's first cause of action referring to the Fourteenth Amendment was dismissed. Contrary to Defendants' assertions, the allegations supporting the first cause of action in the First Amended Complaint do not actually refer to the Fourteenth Amendment. Further, Plaintiff concedes, in her opposition, that she is not pursuing such a claim against any of the remaining Defendants. However, Defendants are correct that certain other paragraphs[2] in the First Amended Complaint erroneously refer to alleged Fourteenth Amendment violations. Accordingly, to address the ambiguity created by Plaintiff's First Amended Complaint, Defendants' Motion to Dismiss the first cause of action is GRANTED IN PART and all references to the Fourteenth Amendment in the First Amended Complaint are STRICKEN.

**B.    Plaintiff's Second Cause of Action for "Failure to Intercede."**

Defendants next move to dismiss Plaintiff's second cause of action, which is brought against Costigan pursuant to 42 U.S.C. § 1983 for an alleged failure to intercede on Plaintiff's behalf during the allegedly unlawful arrest and purported use of excessive force. Defendants' Motion is premised on the fact that Plaintiff admits, in her First Amended Complaint, that Costigan was not initially present at the scene when Plaintiff was placed under arrest. In response, Plaintiff argues that the facts in the First Amended Complaint, when viewed in the light most favorable to her, are sufficient to state a claim against Costigan because Costigan was not only

---

[2] Specifically, the Fourteenth Amendment is mentioned in paragraph 6 and paragraph 26.

United States District Court
For the Northern District of California

"constructively present at the scene via the CHP radio dispatch," but also "actually met with Defendants Arpaia ad [*sic*] Marker at or near the Alhambra off ramp from highway 24 while they [were] en route" with Plaintiff.

Defendants are correct that there "is no respondeat superior liability under § 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Accordingly, Costigan can only be held liable for Arpaia and Marker's alleged constitutional violations under Plaintiff's second cause of action if he "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Id.* Further, in a failure to intercede claim, such liability can attach only if Costigan actually had an opportunity to intercede. *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000). Plaintiff is also correct, however, that, when considering a Rule 12(b)(6) motion, this Court is required to construe the complaint in the light most favorable to Plaintiff and to take all properly pleaded factual allegations as true. *See Jenkins*, 395 U.S. at 421 (1969). The Court is also required to resolve all reasonable inferences in favor of Plaintiff. *Jacobson*, 105 F.3d at 1296. Defendants' argument therefore suffers from several fatal defects. First, Defendants' argument requires the Court to construe the facts in the light most favorable to *Defendants* and to conclude, as a matter of law, that Costigan could not have had an opportunity to intervene merely because he was initially participating in the arrest through radio dispatch. This, however, the Court cannot do at the present stage in the litigation and Defendants have not provided the Court with any authorities that suggest otherwise.[3] Second, Defendants focus solely on Plaintiff's claim for excessive force, and therefore overlook the fact that Plaintiff has also stated a more basic "unreasonable search and seizure" Fourth Amendment claim relating to her arrest. Since Plaintiff has alleged that Costigan was, in fact, physically present while Plaintiff was being held in Arpaia and Marker's police vehicle, the mere fact that Costigan was *initially* corresponding with Arpaia and Marker through the

---

[3] For example, in *Cunningham*, the case had proceeded to summary judgment and thus the court was able to determine, based on the undisputed facts, that the defendant officers had no "realistic opportunity" to intercede. *Id.* at 1290; *see also Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1433 (10th Cir. 1984) ("Plaintiffs presented evidence suggesting that Dunegan could have prevented or stopped Officer Wertz' assault on [the plaintiff] . . . [t]hus the trial court properly denied Dunegan's motion for a directed verdict."); *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982) ("[P]laintiff was entitled to have his case against defendants . . . submitted to the jury upon his having offered testimony that he was beaten by unknown officers in their presence.").

United States District Court
For the Northern District of California

1  radio is irrelevant.[4] Accordingly, Defendants' Motion to Dismiss Plaintiff's second cause of action is DENIED.

## CONCLUSION

IT IS HEREBY ORDERED THAT Defendants Arpaia, Marker, and Costigan's Motion to Dismiss [Docket No. 18] is GRANTED IN PART AND DENIED IN PART.  Defendants' Motion relating to Plaintiff's first cause of action is GRANTED IN PART and Plaintiff's references to the Fourteenth Amendment in paragraphs 6 and 26 of the First Amended Complaint are STRICKEN.  Defendants' request to dismiss Plaintiff's second cause of action is DENIED.

IT IS FURTHER ORDERED THAT the Case Management Conference, currently scheduled for **October 18, 2005 at 1:00 p.m.** is VACATED.  The parties shall appear for a <u>telephonic</u> Case Management Conference on **Wednesday, November 16, 2005 at 3:15 p.m.**  The parties shall **meet and confer** prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the Case Management Conference.  Plaintiff shall be responsible for filing the statement as well as for arranging the conference call.  All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

IT IS SO ORDERED.

Dated: 10/14/05

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

---

[4] This allegation also makes Defendants' argument that Plaintiff has not established causation unpersuasive.  Plaintiff has clearly alleged that Costigan directly participated in the purportedly unlawful "seizure of her person" and that she suffered mental anguish as a result.  *See* FAC at ¶ 27.